IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DANIELS ) <br> 468 Possum Court ) <br> Capitol Heights, MD 20743 ) <br> ) <br>      Plaintiff, ) <br> ) <br>      v. ) <br> ) <br> CHUGACH GOVERNMENT ) <br> SERVICES, INC - POTOMAC ) <br> JOB CORPS CENTER ) <br> 1 D.C. Village Lane, SW ) <br> Washington, D.C. 20032 <br> <br> <br> Serve:  ITS RESIDENT AGENT: <br> CT CORPORATION SYSTEM <br> 1015 15TH STREET, NW <br> SUITE 1000 <br> WASHINGTON, DC. 20005 ) <br> ) <br> ) <br>      **Defendant.** ) <br> ) | Case No. _____ |

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, John Daniels, ("Mr. Daniels"), by his attorneys Richard J. Hackerman, and Richard J. Hackerman, P.A., hereby brings suit under the Title VII of the Civil Rights Act and the Age Discrimination and Employment Act ("ADEA") against Defendant Chugach Government Services, Inc. ("Chugach") and states in support as follows.

### JURISDICTION AND VENUE

1. This is a civil rights action alleging discrimination on the basis of national origin pursuant

toTitle VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et seq**.**, and 42 U.S.C. § 1981a, the Age Discrimination in Employment Act, 29 USC §621, et seq. Venue is appropriate in the United States District for the District of Columbia because Chugach maintains an office in the District of Columbia, and the discrimination against Mr. Daniels took place in the District of Columbia.  28 U.S.C. § 1402(b).

## PARTIES

2. Mr. Daniels is a Black African male from Nigeria, Africa who is at least 40 years old, is a citizen of Liberia, a permanent resident of the United States and a Maryland resident.

3. Chugach is a nonexempt government contractor subject to the requirements of Executive Order 11246, as amended (EO 11246).  Chugach is based in Anchorage, Alaska with an office in the District of Columbia, where Mr. Daniels worked.

## FACTUAL BACKGROUND

4. On October 26, 2009, Mr. Daniels began employment with Chugach as an IT professional in the Systems Administration position.  Two individuals worked in the IT Department, Mr. Daniels and a Lead Systems Administrator, a Black African from Ethiopian, Africa.  Mr. Daniels was in his mid-fifties at this time, and the Lead Systems Administrator was approximately sixty years old.

5. In January 2011, Chugach announced that it was consolidating the Systems Administrator and the Lead Systems Administrator position into one position, titled the Senior IT

Administrator.Chugach informed Mr. Daniels that his position was being eliminated but informed him of the new consolidated position and told him he could apply for the position if he was eligible and met the position requirements.

6. The Senior IT Administrator was posted on September 13, 2011. Both Mr. Daniels and the former Lead Systems Administrator applied, along with another much younger Caucasian male applicant. Although Mr. Daniels and his former supervisor - both of African origin – had worked extensively for Chugach in its IT department and, upon information and belief, had always received excellent work performance evaluations, both of them were denied the new position, which was instead given to the Caucasian candidate. Mr. Daniels and the Caucasian applicant were the final two applicants to be interviewed, and Mr. Daniels was subsequently informed by Chugach that the Caucasian applicant was simply a stronger candidate.

7. In fact, the Caucasian candidate's educational, experience, and professional qualifications were far inferior to Mr. Daniels' qualifications. The Caucasian candidate who Chugach hired as the Senior IT Administrator possessed virtually none of the <u>mandatory</u> educational and experience requirements Chugach required to fill the new position. Mr. Daniels possessed the required Bachelor's Degree in Computer Science to fill the position, the Caucasian candidate only had an Associate's degree in Applied Science. The position required at least one to two years as a network administrator. Mr. Daniels had over 2.5 years of such experience, the Caucasian candidate's qualifications included <u>none</u> of this experience whatsoever. The position required "at least three years

experienced, preferred, and demonstrated knowledge of setup, problem resolution, network support, etc. related to computer hardware and software and providing assistance to users" and "experience with installation, maintenance, and troubleshooting of LAN, WAN, computer hardware and software."  Mr. Daniels' qualifications met or came extremely close to meeting all of these very specific requirements; however, upon information and belief, the Caucasian candidate's qualifications listed literally <u>none</u> of these specific and mandatory experience requirements.

8. Despite Mr. Daniels' very strong resume and past experience working with Chugach and despite the massive and easily identified gaps in the Caucasian candidate's educational and experience qualifications, Mr. Daniels was rejected in favor of the white candidate who supposedly had "stronger" qualifications.  However, Chugach's decision was merely a pretext for discrimination to hire a much younger Caucasian candidate and to terminate Mr. Daniels (and his former supervisor) based on his age and African origin.

9. The evidence of Chugach's discriminatory animus is even further evidenced by the notes Chugach's representatives took while interviewing both candidates. Chugach's Director of Finance and Administrator took notes of her interview with the final two candidates, Mr. Daniels and the Caucasian applicant.  The interview note sheet indicated that the Director specifically noted that the Caucasian candidate <u>only</u> had an Associate's Degree, but the Director failed to give the Caucasian candidate a rating/ranking for that portion of the interview.  In contrast, the Director did rate Mr. Daniels on this portion of the

interview, and Mr. Daniels clearly possessed the mandatory Bachelor's degree required for the Senior IT Administrator position.

10. Chugach notified Mr. Daniels on October 7, 2011 that his layoff would be effective November 11, 2011.  However, Chugach wished to utilize Mr. Daniels' skill and experience temporarily to help transition the Caucasian applicant into his new position.  In fact, Mr. Daniels' did more than transition the Caucasian Senior IT Administrator. Due to his significantly greater experience and skill, Mr. Daniels virtually ran the entire IT program, despite his "temporary" status.

11. Chugach soon noticed the Caucasian Senior IT Administrator began to demonstrate behavioral and poor performance issues.  Approximately a month after he was hired, Chugach terminated the Caucasian candidate.  However, instead of simply giving the permanent Senior IT Administrator position to Mr. Daniels, who was undoubtedly qualified and already effectively running the IT department at a high level, Chugach merely made him the "Acting" Senior IT Administrator.

12. Mr. Daniels continued to perform his job duties as Acting Senior IT Administrator at a high level through February 2012.  However, despite his competent performance, Chugach again advertised the position of Senior IT Administrator.  Tellingly however, unlike the first posting, Chugach failed to even inform Mr. Daniels that the position was being reposted.  Mr. Daniels thus was never even aware that the Senior IT Administrator position was being re-advertised and never applied for the Senior IT Administrator

5

position. Accordingly, Mr. Daniels was taken by complete surprise when he received a letter from Chugach dated March 5, 2012 (but which was delivered to him much later) in which Chugach self-servingly and inaccurately stated:

> During the period following the lay-off, you were requested and agreed, for the time being, to continue work temporarily as Acting Senior IT Administrator while the newly created and approved position was being advertised. However, you opted not to apply for the Sr. IT position when it was advertised and as a result, a qualified more [sic] candidate was selected for the position, thus ending the period in which you were acting.

13. The second "more qualified" candidate who was hired to replace Mr. Daniels was a much younger African-American male. Chugach never told Mr. Daniels that the position was being re-advertised, never inquired why he did not apply since he was already performing at a high level for a number of months as the "Acting" Senior IT Administrator and had previously applied for the permanent position, and never offered to review his application after he finally found that the position was once again being advertised.

14. Chugach's March 5, 2012 letter instead offered Mr. Daniels' a Substitute Instructor position at the Career Services Department at greatly reduced compensation. Mr. Daniels was provided with extremely few hours per week as a Substitute Instructor in March 2012 and could not support himself and his family on such meager employment. Accordingly, Mr. Daniels was forced to seek employment elsewhere but because of his age, was not able to find employment in the IT field and was instead forced to take minimum wage level employment at Walmart for the past two years. Upon information and belief, during this March 2012 time frame, Chugach had other Substitute Instructors who received far more hours and job opportunities than Mr. Daniels. Moreover, once

Mr. Daniels filed his Department of Labor complaint with OFFCP in May 2012 as detailed below, Chugach never provided him with any more job opportunities as a Substitute Instructor, in apparent retaliation for Mr. Daniel's filing of the OFFCP complaint.

15. On May 30, 2012, Mr. Daniels filed a complaint with the Department of Labor, the Office of Federal Contract Compliance Programs ("OFCCP").  The OFFCP conducted an investigation and determined that Chugach violated Executive Order 11246.  In findings made on December 6, 2013 OFFCP stated that Chugach violated EO 11246 by hiring the first Caucasian candidate over Mr. Daniels, a more qualified candidate, when the first candidate did not meet the minimum requirements of the Senior IT Administrator.  Mr. Daniels requested and received a right-to-sue letter from OFCCP.

### COUNT I – VIOLATION OF TITLE VII FOR DISCRIMINATING ON THE BASIS OF NATIONAL ORIGIN

16. Chugach's conduct demonstrated a concerted effort to rid its IT department of older African employees entirely, including Mr. Daniels and his former supervisor.  Instead, Chugach hired a clearly unqualified and inexperienced Caucasian applicant for the position of Senior IT Administrator and used Mr. Daniels to train this individual and then take over for him after him after the Caucasian Administrator was fired.  Chugach then failed to inform Mr. Daniels, its Acting Senior IT Administrator, that it was reposting the permanent position.  Chugach instead claimed that Mr. Daniels never applied and was ineligible.  Chugach then again hired a much younger applicant, and assigned Mr.

7

Daniels to a low paying and low hour position as a Substitute Instructor, forcing Mr. Daniels to seek more steady employment elsewhere. Chugach's actions have devastated Mr. Daniel's financial status and personal life, as detailed further below.

### COUNT II – VIOLATION OF ADEA FOR DISCRIMINATING ON THE BASIS OF AGE

17. Chugach's conduct demonstrated a concerted effort to rid its IT department of older African employees such as Mr. Daniels and his former supervisor. Instead, Chugach hired a clearly unqualified and inexperienced much younger Caucasian applicant for the position of Senior IT Administrator and used Mr. Daniels to train this individual and then take over for him after him after the Caucasian Administrator was fired. Chugach then failed to inform Mr. Daniels, its Acting Senior IT Administrator, that it was reposting the permanent position. Chugach instead claimed that Mr. Daniels never applied and was ineligible. Chugach then hired a much younger applicant, and assigned Mr. Daniels to a low paying and low hour position as a Substitute Instructor, forcing Mr. Daniels to seek more steady employment elsewhere. Chugach's actions have devastated Mr. Daniel's financial status and personal life, as detailed further below.

### DAMAGES REQUESTED

18. Chugach's actions have irreparably damaged Mr. Daniels life. Accordingly, the damages to which Mr. Daniels is entitled are as follows:

   **1. Back pay:** A. October 10, 2011 through November 18, 2011: Mr. Daniels is entitled to the difference between the $51,000.00 annual salary he was earning and the $80,000 annual

salary he should have been earning:  6 weeks @ $557.70 per week:         $3,346.20

  B. November 19, 2011 through March 5, 2012:  Mr. Daniels is entitled to the difference between the $80,000 annual salary he should have been earning and the $70,000.00 he was earning:  9 weeks @ $192.31:         $1,730.79

  C. March 6, 2012 through March 5, 2014:

  Two years salary @ $80,000.00 per year:         $160,000.00

In addition two years of $8,400.00 annual 401k contributions were to be made by his employer.         $16,800.00

  D. Vacation 2 weeks per year:  8 weeks @$1,538.46:         $12,307.58

 **2. Front pay:** March 6, 2014 through March 5, 2016:

  Two years salary @ $80,000.00 per year:         $160,000.00

  In addition $8,400.00 annual 401k contributions were to be made by his employer:         $16,800.00

 **3. Compensatory damages, pain and suffering:**  Mr. Daniels' marriage fell apart during this time due to the financial issues caused by lack of income and the stress he had to endure.  In addition Mr. Daniels' daughter was forced to drop out of college from West Virginia University.  She had to wait and enroll in Georgia State where Mr. Daniels' wife had moved.  The tuition at Georgia State was considerably less.  The amount sought to compensate Mr. Daniels for pain and suffering is:         $100,000.00

 **4. Punitive Damages**: Chugach acted intentionally, with malice towards and in reckless

disregard of Mr. Daniels' rights. The contractor ignored its own requirements for job qualification. Chugach's own interviewer even noted the first Caucasian applicant lacked the necessary educational requirements.  OFFCP noted in its December 6, 2013 findings that Mr. Daniels was a more qualified candidate for the position.  Chugach evidenced its blatant dislike of and disregard for the rights of individuals not born within the United States and/or elderly individuals and its actions all evidenced a pretext for discrimination.  Even after the individual originally hired was let go, the Contractor failed to offer the job to Mr. Daniels, failed to advise or notify him that it was necessary for him to reapply and failed to advise him that the job was being re-advertised.  In addition Mr. Daniels has been unable to obtaining similar employment. The amount of punitive damages sought is:                                    $250,000.00

19. The total damages Mr. Daniels thus seeks is $720,984.57, plus all pre-judgment and post-judgment interest, all of his costs and reasonable attorney's fees under both Title VII and the ADEA, and all other appropriate relief ordered by the Court.

    Wherefore, Plaintiff seeks $720,984.57, plus all pre-judgment and post-judgment interest, and all of his costs and reasonable attorney's fees under both Title VII and the ADEA, and all other appropriate relief ordered by the Court.

    Respectfully Submitted,                              Dated:  Oct. 6, 2014
    _____/s/_____
    Richard J. HackermanBar No.:MD24058
    Richard J. Hackerman, P.A.
    116 West University Parkway
    Baltmore, Md. 21210
    (410) 243-8800
    Richard@RichardHackerman.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOHN DANIELS**<br>**468 Possum Court**<br>**Capitol Heights, MD 20743**<br><br>**Plaintiff,**<br><br>v.<br><br>**CHUGACH GOVERNMENT**<br>**SERVICES, INC - POTOMAC**<br>**JOB CORPS CENTER**<br>**1 D.C. Village Lane, SW**<br>**Washington, D.C. 20032**<br><br><br>Serve:  ITS RESIDENT AGENT:<br>CT CORPORATION SYSTEM<br>1015 15TH STREET, NW<br>SUITE 1000<br>WASHINGTON, DC. 20005<br><br>**Defendant.** | Case No. _____ |

## REQUEST FOR JURY TRIAL

Plaintiff, John Daniels, ("Mr. Daniels"), by this attorneys Richard J. Hackerman, and Richard J. Hackerman, P.A., hereby requests this matter be tried before a jury

_____/s/_____
Richard J. Hackerman Bar No.:MD24058
Richard J. Hackerman, P.A.
116 West University Parkway
Baltimore, Md. 21210
(410) 243-8800
Richard@RichardHackerman.com

11