**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                  )
JOHN DANIELS,                     )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )   Civ. Action No. 14-1667 (EGS)
                                  )
CHUGACH GOVERNMENT SERVICES,      )
INC.                              )
                                  )
          Defendant.              )
_____   )

**MEMORANDUM OPINON**

Plaintiff John Daniels ("Mr. Daniels") is a middle-aged man
from Liberia, West Africa. Am. Compl. ¶ 4. A permanent resident
of Maryland, Mr. Daniels worked for Defendant Chugach Government
Services ("Chugach") as a Systems Administrator from 2009 until
2011. *Id.* ¶ 4. In the fall of 2011, Chugach reorganized and Mr.
Daniels was laid off. *Id.* ¶ 5. The position held by Mr. Daniels
was combined with the position held by Mr. Daniels' middle-aged
Ethiopian colleague. *Id.* Mr. Daniels interviewed for the new
position, but a younger Caucasian male was hired instead. *Id.* ¶
6. Mr. Daniels trained the new hire. *Id.* ¶ 10. After one month,
the new hired was dismissed for poor performance. *Id.* ¶ 11. Mr.
Daniels served as Acting Lead Systems Administrator for
approximately four months. *Id.* ¶ 12. Mr. Daniels was never
invited to apply for the permanent position, which was awarded

to a younger African American candidate in March 2012. *Id.* ¶ 10.

Based on these events, Mr. Daniels alleges that Chugach

discriminated against him based on his national origin, age and

race. *Id.* ¶¶ 10-13. Chugach moves to dismiss Mr. Daniels'

Amended Complaint for failure to state a claim. Def.'s Mot.

Dismiss, Docket No. 14. Upon consideration of the motion, the

response and reply thereto, the applicable law, and the entire

record, Defendant's Motion is GRANTED in part and DENIED in

part.

## I.   BACKGROUND

### A. Chugach Government Services

Chugach is a government contractor based in

Alaska. Am. Compl. ¶ 3. Mr. Daniels was employed at Chugach's

Washington, D.C. office. *Id.* At the time of the events alleged

by Mr. Daniels, Chugach was a wholly owned subsidiary of Chugach

Alaska Corporation, an Alaska Native Corporation created

pursuant to the terms of the Alaska Native Claim Settlement Act

("ANCSA"). Def. Mem. Supp., Docket No. 14 at 7. The Alaska

Native Settlement Claim Act of 1971 extinguished all Native

claims to Alaskan land based on aboriginal use. C*ook Inlet

Region, Inc. v. Rude*, 690 F.3d 1127, 1129 (9th Cir. 2012).

Native Alaskans were compensated monetarily and with title to

forty million acres of land. *Id.* ANCSA transferred title of the

settlement land to twelve regional corporations, including the

Chugach Alaska Corporation, and other entities created by the Act. *Id.; see also United States v. Atl. Richfield Co.*, 435 F. Supp. 1009, 1020-21 (D. Alaska 1977) *aff'd*, 612 F.2d 1132 (9th Cir. 1980) ("The intent of Congress in the Settlement Act was to settle the claims of Alaska Natives and to compensate them without deciding the difficult and disputed question of the existence and extent of aboriginal title to Alaska lands.").

**B. Mr. Daniels' Employment at Chugach**

Mr. Daniels was employed by Chugach's Washington, D.C. office as an IT professional. Am. Compl. ¶ 4. Mr. Daniels' employment with Chugach began in 2009 as a Systems Administrator. *Id.* At this time, Mr. Daniels was in his mid-fifties. The Lead Systems Administrator was an Ethiopian male in his sixties. *Id.* In 2011, Chugach announced a reorganization, including the consolidation of Mr. Daniels' position with the Lead Systems Administrator position. *Id.* ¶ 5. Mr. Daniels and his Ethiopian colleague applied for the new position, but Chugach hired a younger Caucasian male. *Id.* ¶ 6. Mr. Daniels alleges that the new hire did not possess the relevant education or work experience requirements that were posted in the job description. *Id.* ¶ 7.

Chugach asked Mr. Daniels' to work in a temporary capacity to assist the Caucasian male's transition into the newly-created senior IT position. *Id.* ¶ 10. After one month, the new hire was

dismissed from his duties due to behavioral and performance issues. *Id.* ¶ 11. Chugach asked Mr. Daniels to serve as Acting Senior IT Administrator. *Id.* Mr. Daniels served in this capacity from approximately November 2011 to February 2012. *Id.* ¶ 12. In early March, 2012, Mr. Daniels received a letter informing him that his term as Acting Senior IT Administrator was over. *Id.* Mr. Daniels alleges that he was not invited to apply for the permanent position. *Id.* The person hired for the permanent position was a "much younger African-American male, who unlike Mr. Daniels or his former supervisor, had no direct African ancestry." *Id.* ¶ 13. Chugach invited Mr. Daniels to work as a Substitute Instructor, but with few hours and only minimum wage, Mr. Daniels could not support his family and sought work at Walmart. *Id.* ¶ 14.

### C. Mr. Daniels' Office of Federal Contract Compliance Program Complaint.

On May 30, 2012, Mr. Daniels filed a complaint with the Office of Federal Contract Compliance Program ("OFCCP"). *Id.* ¶ 15. Although the OFCCP findings are not attached to Mr. Daniels' Complaint, he alleges OFFCP concluded that Chugach violated Executive Order 11236 by "hiring the first Caucasian candidate over Mr. Daniels, a more qualified candidate, when the first candidate did not meet the minimum requirements of Senior IT

Administrator." *Id.*[1] Chugach offered Mr. Daniels $2,287.20 in

back pay, an offer rejected by Mr. Daniels as "entirely

unsatisfactory." *Id.* Mr. Daniels requested a right-to-sue letter

from OFCCP and now alleges racial discrimination under Section

1981 (Count I), national origin discrimination under Title VII

(Count II), and age discrimination under the Age Discrimination

in Employment Act (Count III). *Id.* ¶¶ 16-18. Mr. Daniels seeks

over $700,000.00 in damages, plus pre-judgment and post-judgment

interest.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) tests the legal sufficiency of a complaint. *Browning v.

Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The pleading must

contain a "short plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The pleading

standard does not require detailed factual allegations, but

should be "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Id.* at 678. Naked assertions without

factual enhancements or formulaic recitations of the elements of

---

[1] Executive Order 11236 prohibits government contractors from
discriminating against employees on the basis of race, color,
religion, sex, sexual orientation, gender identity, or national
origin. *See* Executive Action 11236, available at
http://www.dol.gov/ofccp/regs/statutes/eo11246.htm.

a cause of action will not suffice. *Id*. Rather, to survive a

motion to dismiss, a complaint "must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on

its face.'" *Id*. Plausibility entails that the plaintiff has pled

factual content that is not merely consistent with liability but

allows the Court to draw a reasonable inference that the

defendant is liable for the alleged misconduct. *Id*.

In considering a 12(b)(6) motion, the Court should liberally

view the complaint in the plaintiff's favor, accepting all

factual allegations as true, and giving the plaintiff the

benefit of all inferences that can be drawn therefrom. *Redding

v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal

v. MCI Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

**III. ANALYSIS**

### A. Mr. Daniels states a claim for race discrimination under Section 1981.

Chugach argues that Mr. Daniels § 1981 claim for race

discrimination fails because it is (1) a national origin claim

filed under the pretense of race; (2) time barred under a three-

year statute of limitations; and (3) barred based on federal

immunity because Chugach is an instrumentality of the federal

government.  Def.'s Mem. Supp. at 9-14. Mr. Daniels acknowledges

that national origin and race claims are distinct, but maintains

that he has adequately pled a race discrimination claim under §

1981 because "Chugach was trying to rid its staff of Black

Africans, who present a different culture and heritage from

those of the unqualified Caucasian candidate Chugach hired——and

then fired——before hiring an African American without informing

plaintiff of the existence of the reposting of the position."

Pl.'s Mem. Opp. at 5. Mr. Daniels also asserts that a four-year

statute of limitations applies and contends that Chugach does

not qualify as an instrumentality of the federal government. *Id.*

at 2-5.

### 1. Mr. Daniels has pled adequate facts to maintain a claim for race discrimination under § 1981.

Section 1981 prohibits racial discrimination in the

"making, performance, modification, and termination of

contracts" and protects classes of persons from intentional

discrimination based on their ancestry or ethnic

characteristics. 42 U.S.C. § 1981(a); *St. Francis College v. Al-*

*Khazraji*, 481 U.S. 604, 613 (1987) (defining race as used in §

1981 as including ancestry and ethnicity claims). To establish a

claim under § 1981, a plaintiff must show that (1) he is a

member of a racial minority group; (2) the defendant intended to

discriminate on the basis of race; and (3) the discrimination

pertained to one of the activities enumerated in the statute.

*Dickerson v. District of Columbia,* 806 F. Supp. 2d 116, 119

(D.D.C. 2011). A successful Section 1981 claim alleges

discrimination based on ancestry or ethnic characteristics, not country of origin. *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) ("Race and national origin are 'ideologically distinct categories.'"); *see also* BARBARA T. LINDEMANN, ET AL., EMPLOYMENT DISCRIMINATION LAW, 6-3, Equal Employment Opportunity Committee Section of Labor and Employment law American Bar Association, 5th ed., V1 (2012) ("Although ancestry can fall within the purview of § 1981, national origin does not.").

The Supreme Court has "refused to narrowly define the concept of race." *Khair v. Campbell Soup Co.*, 893 F. Supp. 316 (D.N.J. 1995). As discussed in *St. Francis College*,

> § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive group of *homo sapiens.*"

481 U.S. 604 at 613 (1987). Here, Mr. Daniels alleges that Chugach sought to "rid its IT department of Black African employees" and "eliminate him due to his black African heritage and ancestry." Compl. ¶ 16. Mr. Daniels alleges that his Ethiopian colleague's position was also terminated through Chugach's reorganization. Am. Compl. ¶ 10. Mr. Daniels also identifies the individuals hired to fill the newly created position as a Caucasian male and an African-American male. Am. Compl. ¶ 11-13. Finally, Mr. Daniels asserts that the OFCCP concluded that Chugach violated Executive Order 11236, which

prohibits discrimination based on *inter alia*, race and color, when it hired the Caucasian male instead of Mr. Daniels because the Caucasian male "did not meet the minimum requirements of the Senior IT Administrator job description." *Id.* ¶ 15.

"While there may be some overlap between claims based on national origin and claims based on protected status under Section 1981, any potential overlap does not disqualify a Plaintiff from going forward under Section 1981." *Uzoukwu v. Metropolitan Washington Council of Governments, et al.*, 27 F. Supp. 3d 62, 67 (D.D.C. 2014). The allegation that Chugach hired a white male who did not meet the minimum job requirements is sufficient to state a plausible claim for relief under § 1981. *See id.* (holding that a Nigerian-American's claim of race discrimination under § 1981 should be permitted based on alleged incidents where her white colleagues were treated more favorably). In short, a liberal view of Mr. Daniels' complaint, accepting all factual allegations as true and giving him the benefit of all inferences that can be drawn therefrom, Mr. Daniels has sufficiently stated a claim for racial discrimination under § 1981.

### 2. A four-year statute of limitations applies to Mr. Daniels' § 1981 claim.

Chugach also argues that Mr. Daniels' § 1981 claim is barred by a three-year statute of limitation period. Def.'s Mem.

Supp. at 9-10. In *Jones v. R.R. Donnelley & Sons Co.*, the
Supreme Court held that "a cause of action 'aris[es] under an
Act of Congress enacted' after December 1, 1990——and therefore
is governed by § 1658's 4 year-statute of limitations——if the
plaintiff's claim against the defendant was made possible by a
post-1990 enactment." 541 U.S. 369, 382 (2004). The Civil Rights
Act of 1991 expanded the scope of § 1981 claims to include the
prohibition of racial discrimination in the making and enforcing
of contracts. 42 U.S.C. § 1981 (a)*; see also Hamilton v.
District of Columbia*, 852 F. Supp.2d 139, 144 (D.D.C. 2012).
Thus, a four-year statute of limitations applies to Mr. Daniels'
claims in this case. Mr. Daniels' claim was filed on October 6,
2014, and therefore falls within the four-year statute of
limitations.

### 3. Chugach is not an instrumentality of the federal government.

Finally, Chugach argues that because Mr. Daniels brought
suit against "Chugach Government Services, Inc. – Potomac Job
Corps Center," his § 1981 claim is barred because the Federal
Jobs Corps Center operates under the color of federal law and is
therefore immune from suit. Def.'s Mem. Supp. at 13. Mr. Daniels
insists that Chugach is not an instrumentality of the federal
government, nor was it acting under the color of federal law.
Pl.'s Mem. Opp. at 3-4.

Section 1981(c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Chugach notes that the federal Job Corps Program was created by Congress and is implemented by the U.S. Department of Labor ("DOL"). Def.'s Mem. Supp. at 13. Chugach argues that the length and detail of documents governing Job Corp "demonstrate the high degree of control that the DOL exercises over federal Job Corp Centers." *Id.*

Chugach's immunity under the color of federal law argument goes too far. As noted by Mr. Daniels, the authority cited by Chugach is misplaced, as all cases cited by Chugach involve an actual federal government agency. *See, e.g. DynaLantic Corp. v. U.S. Dept. of Defense*, 855 F. Supp.2d 237, 291 (D.D.C. 2012) (dismissing § 1981 claim because Defendant Department of Defense is a federal agency, and thus operating under the color of federal law); *Williams v. Glickman*, 936 F. Supp. 1 at 3 (D.D.C. 1996) (dismissing § 1981 claim based on federal farm loan applications); *see also Sindram v. Fox*, 374 Fed. Appx. 302, 304 (3d Cir. 2010) (dismissing § 1981 claim because Defendant Department of Education is a federal agency, and thus operating under the color of federal law). Chugach has cited to no authority, and the Court is aware of none, that has deemed a private government contractor as an instrumentality of

the federal government or otherwise operating under the color of federal law. Accordingly, Chugach is not immune from suit under § 1981.

For all of these reasons, Chugach's Motion to dismiss Daniels' § 1981 claim is DENIED.

### B. Mr. Daniels' Title VII national origin claim fails because Chugach is exempt from the definition of "employer" under Title VII.

Chugach argues that Mr. Daniels' claim of discrimination based on national origin fails because Chugach was not an "employer" as required under Title VII at the time of the events alleged. Def.'s Mem. Supp. at 4. Rather, Chugach maintains that it was a wholly owned subsidiary of the Chugach Native Association, which qualifies as an Alaska Native Corporation ("ANC") and is therefore exempt from the definition of employer under Title VII. *Id.* Mr. Daniels contends Chugach has not established that it was a wholly owned subsidiary during at the time of the events in question, deeming Chugach's motion as to Count II premature. Pl.'s Mem. Opp., Docket No. 15 at 1-2.

Title VII makes it an unlawful employment practice for "an employer . . .  to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Based on 43 U.S.C. § 1626(g), Courts have routinely held that ANCs are exempt from the definition of employer under Title VII. *Fox v.*

*Portico Reality Services Office*, 739 F. Supp.2d 912, 919 (E.D.

Va. 2010) (holding that 43 U.S.C. § 1626(g) exempts Native

Corporations and direct subsidiaries, but not indirect

subsidiaries, from the definition of employer under Title VII).

43 U.S.C. § 1626(g) states:

> For the purposes of implementation of the Civil
> Rights Act of 1964 [42 U.S.C.A. § 2000a et seq.],
> a Native Corporation and corporations,
> partnerships, joint ventures, trusts, or affiliates
> in which the Native Corporation owns not less than
> 25 per centum of the equity shall be within the
> class of entities excluded from the definition of
> "employer" by section 701(b)(1) of Public Law 88-
> 352 (78 Stat. 253), as amended [42 U.S.C.A.
> 2000e(b)(1)], or successor statues.

43 U.S.C. § 1626(g). This statute was passed with the intent to

"facilitate Alaska Native Shareholder employment programs by

resolving any uncertainty as to the applicability of the Civil

Rights Act of 1964 to certain business enterprises in which

Native Corporations participate." *Fox*, 739 F. Supp. 2d 912 at

919 (citing Sen. Rep. No. 100-201, at 39 (1987)).

In support of its Motion, Chugach submitted to the Court

its 2011 and 2013 Biennial Reports, which confirm that ANC

Chugach Alaska Corporation owned 100 percent of Chugach from

2009 to 2012, the period relevant to his matter. Def.'s Reply

Mem., Docket No. 16, Ex. A. Based on this documentation, the

Court is satisfied that Chugach was a wholly owned subsidiary at

the time of the alleged discrimination. Chugach is therefore

exempt from the definition of employer under Title VII and Mr.

Daniels' claim for discrimination based on national origin

fails. *Pratt v. Chenega Integrated Systems*, Case No. 07-1573,

2007 WL 2177335 at *3 (N.D. Cal. July 27, 2007) (holding that

documents showing entity was at least 25 percent owned by a

Native Corporation was sufficient to grant motion to dismiss

based on entities exemption from Title VII's definition of

employer); *see also Aleman v. Chugach Support Services, Inc.*,

485 F.3d 206, 211 (4th Cir. 2007) (affirming that direct

subsidiary of Alaska Native Corporation was exempt from

definition of employer under Title VII, but did not extend to

claims under Section 1981); *Thomas v. Choctaw Management/Service*

*Enterprise*, 313 F.3d 910, 911 (5th Cir. 2002) (affirming

District Court's granting of Defendant's Motion to Dismiss

because, *inter alia*, Indian Tribes are exempt from the

definition of employer under Title VII).

For all of these reasons, Chugach's Motion to Dismiss Mr.

Daniel's Title VII national origin discrimination claim is

GRANTED.

### D. Mr. Daniels' Age Discrimination claim fails because he did not properly exhaust his administrative remedies through the EEOC.

Chugach argues that Mr. Daniels' age discrimination claim

is barred as a matter of law because he failed to exhaust his

administrative remedies through the EEOC. Def.'s Mem. Supp. at

8. Mr. Daniels maintains that his OFCCD complaint satisfies exhaustion of his age discrimination claim. Pl.'s Mem. Opp. at 6.

Before bringing suit under the ADEA, plaintiffs must exhaust their administrative remedies. 29 U.S.C. § 626(d)(1). Doing so requires filing a charge with the EEOC within 180 days after the alleged unlawful practice occurred. *Id.; see also Washington v. Washington Metropolitan Area Transit Authority*, 160 F.3d 750, 752 (D.C. Cir. 1998). Here, Mr. Daniels does not dispute that he failed to file a charge with the EEOC; rather, he argues that his OFCCD complaint is sufficient to exhaust all administrative remedies related to his age discrimination claim. Pl.'s Mem. Opp. at 6.

In support of his argument, Mr. Daniels points to a November 2011 Memorandum of Understanding ("MOU") between the Equal Employment Opportunity Commission (EEOC) and OFCCP, which states that "all complaints/charges of employment discrimination filed with OFCCP alleging a Title VII basis (race, color, religion, sex, national origin, or retaliation) shall be received as complaints/charges simultaneously dual-filed under Title VII." EEOC, 76 Fed. Reg. 71029-32 (Nov. 16, 2011). Mr. Daniels acknowledges that discrimination on the basis of age is not mentioned in the MOU, but argues that "it makes little sense for a complainant to have the burden of filing two separate

complaints with the EEOC for age discrimination and with OFCCP

for Title VII violations when the discrimination alleged arises

from the same operative actions undertaken by the government

contractor." Pl.'s Mem. Opp. at 6. Mr. Daniels also represents

that the EEOC directed him to assert all of his claims with the

OFCCP. *Id.* at 7. Finally, in large part conceding that his age

discrimination claim should have been exhausted through the

EEOC, Mr. Daniels requests that the Court equitably toll the

time necessary to allow Mr. Daniels to properly exhaust his age

discrimination claim through the EEOC. *Id.*

Mr. Daniels cannot exhaust his age discrimination through

the OFCCP for three principle reasons. First, the plain language

of the MOU does not mention age discrimination claims. EEOC, 76

Fed. Reg. 71029-32 (Nov. 16, 2011). Second, the MOU applies to

discrimination claims *alleging a Title VII basis*. *Id.* (emphasis

added). Here, Mr. Daniels alleges his age discrimination claim

under ADEA. Am. Compl., Count III ("VIOLATION OF ADEA FOR

DISCRIMINATION ON THE BASIS OF AGE"). Third, case law supports

the conclusion that Mr. Daniels' OFCCP complaint does not

satisfy the requirement of filing a charge with the EEOC.

*Granger v. Aaron's Inc.*, Case No. 09-1634, 2010 WL 2464832, at

*4 (W.D. La June 14, 2010) aff'd, 636 F.3d 708 (5th Cir. 2011)

(holding that a complaint filed with the OFCCP, over which the

OFCCP has no jurisdiction, cannot be considered a dual-filed

complaint under the provisions of an MOU); *see also Meckes v. Reynolds Metals Co.*, 604 F. Supp. 598, 601 (N.D. Ala. 1985) (holding that because OFCCP was never a proper place to file any kind of age discrimination claim, plaintiff's OFCCP charge of age discrimination was not a 'filing' of an ADEA charge and could not constitute a 'joint' filing with EEOC under the Memorandum).

Mr. Daniels argument that equitable tolling should be applied so that he may timely file an age discrimination complaint with the EEOC is equally without merit. The courts equitable tolling power "will be exercised only in extraordinary and carefully circumscribed instances." *Washington v. Washington Metro*, 160 F.3d 750, 752 (D.C. Cir. 1998). Equitable tolling does not extend to "what is at best, a garden variety of excusable neglect." *Id.* (citing *Irwin v. Dep't. of Veteran Affairs*, 498 U.S. 89, 96 (1990)).

Here, the statement Mr. Daniels' submitted with his OFCCP complaint does not mention an allegation of age discrimination. Def.'s Mem. Supp., Ex. 4. Only in his complaint, filed two years after the alleged discriminatory events, does Mr. Daniels allege an age discrimination claim. Compl., Docket No. 1 at 8. These facts strongly suggest that Mr. Daniels did not timely seek to exhaust is administrative remedies on his age discrimination claim under the ADEA. Moreover, although Mr. Daniels claims that

17

the EEOC advised him to file all charges with the OFCCP, Mr. Daniels does not allege that Chugach engaged in any misconduct designed to mislead Mr. Daniels about when his claim should be filed, or otherwise induce him to miss the filing deadline. *See Irwin*, 498 U.S. 89 at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

For all of these reasons, Chugach's Motion to Dismiss Mr. Daniels' age discrimination claim under the ADEA is GRANTED.

## IV.   CONCLUSION

After consideration of the motion, the response and reply thereto, the applicable law, and the entire record, for the reasons discussed in this Memorandum, Defendant's Motion is GRANTED in part and DENIED in part. An appropriate order accompanies this Memorandum Opinion.


**Signed: Emmet G. Sullivan**
        **United States District Court Judge**
        **March 7, 2016**