**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN DANIELS,

      Plaintiff,

   v.

                          Civ. Action No. 14-1667 (EGS)

CHUGACH GOVERNMENT SERVICES,
INC.

      Defendant.

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is defendant Chugach Government Services Incorporated's ("CGSI") motion for summary judgment on plaintiff John Daniels' claim of discrimination under 42 U.S.C. Section 1981. Mr. Daniels alleges discrimination on the basis of race, ancestry and ethnic considerations under Section 1981 based on CGSI's failure to select him for a Senior IT Administrator position both when the position was posted in September 2011 and when it was reposted in November of 2011. CGSI moves for summary judgment, arguing that Mr. Daniels has failed to rebut its legitimate reasons for not selecting him for the position and, in the alternative, failed to provide any evidence that supports a finding of intentional discrimination. Upon consideration of the motion, the response and reply

thereto, the applicable law, and the entire record, CGSI's
motion for summary judgment is **GRANTED.**

## I. Background[1]

Plaintiff John Daniels emigrated from Africa, and, in
October of 2009, began working for CGSI at its Potomac Job Corps
Center as a Systems Administrator. *See* Def.'s Supplemental
Statement of Undisputed Facts ("SOF"), ECF No. 32-2 ¶ 1; *see
also* Pl.'s SOF, ECF No. 33-4. In 2011, CGSI announced that it
was consolidating its Systems Administrator and Lead Systems
Administrator positions into one position, the Senior
Information Technology ("IT") Administrator position. Def.'s
SOF, ECF No. 32-2 ¶ 2. CGSI notified Mr. Daniels that due to the
reorganization, the position he currently held would no longer
be funded and that his layoff would be effective November 2011.
*Id.* ¶ 3. CGSI also notified Mr. Daniels that he could apply for
other available positions as long as he was qualified. *Id.*

CGSI posted a Senior IT Administrator position on September
13, 2011. *Id.* ¶ 4. CGSI advertised this position and posted the
opening on the Chugach Job Board. *Id.* ¶ 32. The mandatory
requirements for the position included a bachelor's degree from
an accredited college or university and "at least three years
experience[] preferred and demonstrated knowledge of setup,

---

[1] Unless otherwise noted, the following facts are undisputed.

problem resolution, network support, etc., related to computer hardware and software; and providing assistance to users." CGSI Job Description, ECF No. 32-6 at 4. Mr. Daniels and two other individuals, Andy Berhe and Keith Lucas, applied for the position. Def.'s SOF, ECF No. 32-2 ¶ 6. All three men were interviewed by two CGSI Human Resource employees and were scored on a scale of 0-28. *Id.* ¶¶ 7-12. Mr. Berhe received scores of 20 and 21 out of 28. *Id.* ¶¶ 7-8. Mr. Daniels received scores of 21 and 22 out of 28. *Id.* ¶¶ 11-12. Mr. Lucas received the highest scores by both interviewers, 25 and 26 out of 28. *Id.* ¶¶ 9-10.

Mr. Daniels and Mr. Lucas advanced in the selection process and proceeded to a final interview with Leslie Neloms, the Director of Finance and Administration. *Id.* ¶ 13. Ms. Neloms had the ultimate hiring authority for the Senior IT Administrator position. *Id.* ¶ 14. Ms. Neloms interviewed Mr. Lucas at the end of September 2011 and considered him to be a strong candidate. *Id.* ¶ 15. Specifically, Ms. Neloms was impressed by his many years of experience in the IT Field. *Id.* Mr. Lucas had at least ten more years of relevant experience in the IT Field than Mr. Daniels, *id.* ¶ 21, and had received higher scores based on the initial round of interviews, *id.* ¶ 22. It is undisputed that Ms. Neloms, at the time she selected Mr. Lucas for the position, did not realize that he did not have a Bachelor's degree, one of the mandatory requirements for the job. Decl. of Leslie Neloms

("Neloms Decl."), ECF No. 32-13 ¶¶ 7-9. When Ms. Neloms was deciding between Mr. Daniels and Mr. Lucas for the position, "race, ancestry, and national origin did not have any bearing on her decision." Def.'s SOF, ECF No. 32-2 ¶ 19. Mr. Daniels does not dispute this assertion. *Compare id.* with Pl.'s SOF, ECF No. 33-4 ¶ 19. (admitting that Ms. Neloms did not take into account national origin in her hiring decisions).

Mr. Lucas was notified that he had been selected for the position on October 6, 2011 but was terminated shortly "thereafter for reasons unrelated to his qualifications". Def.'s SOF, ECF No. 32-2 ¶ 24. Mr. Daniels was made Acting Senior IT Administrator in November of 2011. *Id.* ¶ 25. Also in November 2011, CGSI reposted the Senior IT Administrator position. *Id.* ¶ 27. CGSI posted the opening on the Chugach Job Board. *Id.* ¶ 28. At the time of the posting, Mr. Daniels was aware of how to check the Chugach Job Board and had access to the Job Board. *Id.* ¶ 30. Mr. Daniels had checked the Job Board prior to November 2011, and used the Job Board in September of 2011 when he submitted his resume for the first Senior IT Administrator posting. *Id.* ¶¶ 31–32. Mr. Daniels did not check to see if the Senior IT Administrator position was posted a second time, and never applied for the November 2011 Senior IT Administrator position. *Id.* ¶¶ 35–36.

CGSI interviewed multiple individuals for the November 2011 posting of the Senior IT Administrator position. *Id.* ¶ 37. Justin Thomas, an African-American man, applied for the position on January 8, 2012, by submitting his application online. *Id.* ¶ 38. Mr. Thomas participated in a telephone interview for the position on January 25, 2012, and was hired on February 3, 2012. *Id.* ¶¶ 39-40. Mr. Daniels was terminated from his acting position and he was offered a position as Substitute Instructor.[2] *Id.* ¶ 42.

Mr. Daniels filed an administrative complaint with the Office of Federal Contract Compliance Program ("OFCCP") alleging that CGSI violated Executive Order 11246. OFCCP Compl., ECF No. 30-2 at 7. EO 11246 prohibits government contractors from discriminating against employees on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. See Executive Action 11246, available at http://www.dol.gov/ofccp/regs/statutes/eo11246.htm. In his complaint, Mr. Daniels alleged that CGSI violated EO 11246 by failing to hire him over a less qualified candidate. *See* OFCCP Compl., ECF No. 30-2 at 7. The OFCCP agreed and stated that CGSI

---

[2] The parties disagree as to the date on which Mr. Daniels was notified about the termination of his acting position. However, this fact is not material to the Court's decision. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(stating "material" fact is one capable of affecting the substantive outcome of the litigation).

"violated Executive Order 11246 when it hired the Selected Candidate, who did not meet the minimum requirements for the position, over the Complainant." *Id.* at 11. Specifically, the OFCCP found that the selected candidate did not meet one of the mandatory requirements for the Senior IT Administrator position which was a Bachelor's degree or higher. *Id.* at 9. OFCCP further explained that CGSI stated that selected candidate provided conflicting information about this requirement, and that Ms. Neloms did not catch the significance of the candidate's education in relation to the mandatory requirements. *Id.* at 10. Ms. Neloms stated that the candidate should not have been considered. *Id.* OFCCP found that the "Selected Candidate was hired without meeting the minimum qualifications and over a more qualified applicant, the Complainant." *Id.*

Thereafter, Mr. Daniels brought this suit alleging several claims against CGSI. *See generally*, Amended Compl., ECF No. 13. This Court granted in part CGSI's motion to dismiss, and the sole claim that remains is the Section 1981 claim for intentional discrimination. *See Daniels v. Chugach Government Serv.'s, Inc.*, 149 F. Supp. 3d 183 (D.D.C 2016). The parties have engaged in discovery pursuant to this Court's scheduling order issued September 22, 2016. *See* ECF No. 23. CGSI served interrogatories, requests for production of documents, and requests for admissions on December 9, 2016. *See* Pl.'s Mot. To

Withdraw Admissions ("Mot. to Withdraw"), ECF No. 25. Mr.
Daniels, for his part, served interrogatories and requests for
production of documents, but did not seek to depose any
potential witnesses. *Id.* Mr. Daniels also failed to respond to
CGSI's request for admissions, interrogatories, and production
of documents in a timely manner.[3] *Id.*

CGSI filed a motion for summary judgment prior to the
completion of discovery, Def.'s Mot., ECF No. 28, and
subsequently filed a supplemental motion for summary judgment
after discovery closed, Def.'s Supp. Mot., ECF No. 32. Mr.
Daniels has opposed both motions, Pl.'s Opp'n, ECF No. 30; Pl.'s
Supp. Opp'n, ECF No. 33, and  the motions are ripe for
adjudication.

---

[3] Mr. Daniels, by failing to respond to CGSI's request for
admissions, admitted the substance of requests. *See* Fed. R. Civ.
P. 36(a). He subsequently filed a motion to withdraw the deemed
admissions. Mot. To Withdraw, ECF No. 25. Neither CGSI relies on
the deemed admissions in support of its motion, nor does the
Court in this Memorandum Opinion. Accordingly, there is no
prejudice in allowing Mr. Daniels to withdraw the deemed
admissions. *Baker v. Potter*, 212 F.R.D. 8, 12 (D.D.C. 2002)
("[W]ithdrawal is permissible if a party demonstrates that
withdrawal will serve the presentation of the merits without
prejudicing the party who requested the admissions."). The Court
also finds that the admissions would effectively bar Mr. Daniels
from presenting the case on the merits. *Id.* Therefore, because
withdrawal would serve the presentation of the merits and would
not prejudice CGSI, Mr. Daniels' motion to withdraw is **GRANTED**.

## II. Legal Standard

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52 (internal quotation marks omitted). In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

## III. Analysis

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts" and protects classes of persons from intentional discrimination based on their ancestry or ethnic characteristics. 42 U.S.C. § 1981(b); *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987)(defining race as used in § 1981 as including ancestry and ethnicity claims). To establish a claim under Section 1981, a plaintiff must show that (1) he is a member of a racial minority group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination pertained to one of the activities enumerated in the statute. *Dickerson v. District of Columbia*, 806 F. Supp. 2d 116, 119 (D.D.C. 2011). A successful Section 1981 claim alleges discrimination based on ancestry or ethnic characteristics, not country of origin. *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008)("Race and national origin are 'ideologically distinct categories.'").

Discrimination claims under Section 1981 are analyzed the same way as discrimination claims under Title VII of the Civil Rights Act. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013). Therefore, when there is no direct evidence of discrimination, as is the case here, courts apply the M*cDonnell Douglas Corp. v. Green*, 411 U.S. 792, burden-shifting framework. *DeJesus v. WP Company LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See id*. The burden then shifts to the employer to provide a "legitimate, nondiscriminatory reason" for the adverse employment action. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)(citations omitted). If the employer can make such a showing, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005)(quoting T*ex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

However, once an employer has asserted a legitimate, non-discriminatory reason for an adverse employment action under the *McDonnell Douglas* framework, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has emphasized that the inquiry into the *prima facie* case becomes "an unnecessary and improper 'sideshow.'" *Jones v. Bernanke*, 557

F.3d 670, 678 (D.C. Cir. 2009)(citation omitted). Once a defendant has stated a legitimate, non-discriminatory reason for the adverse employment action, the question becomes whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

In answering this question, courts should consider "all the evidence, including '(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (citation omitted).

**A. CGSI Has Proffered Legitimate, Nondiscriminatory Reasons**

"Defendants need only 'proffer--not prove--a legitimate nondiscriminatory reason for not offering [a plaintiff] [a] . . . position.'" *Butler v. Ashcroft*, 293 F. Supp. 2d 74, 78 (D.D.C. 2003)(citations omitted). Furthermore, the D.C. Circuit has held that choosing between applicants "based solely upon their answers during the interview" is "reasonable and non-

discriminatory." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1182 (D.C. Cir. 1996). Indeed, selecting a candidate "solely upon the basis of the scores . . . assigned to the applicants. . . . precludes the possibility that [a defendant] discriminated against [a plaintiff] on the basis of his race." *Id.*

CGSI argues that its reason for not offering Mr. Daniels the September 2011 Senior IT Administrator position is that it determined, through several interviews conducted by three employees, that Mr. Lucas was more qualified for the position. Def.'s Supp. Mot., ECF No. 32–1 at 9.[4] For the November 2011 position, CGSI argues that its reason for not offering Mr. Daniels that position was because Mr. Daniels never applied for the position. *Id.*

CGSI has met its burden in this case to proffer legitimate non-discriminatory reasons for its selection decisions. With respect to the September 2011 position, CGSI states that it determined through the interviews of the three candidates and comparisons of their relative work experience, that Mr. Lucas was the most qualified candidate. Two members of the Human Resources Department interviewed the three candidates for the

---

[4] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

position, and based on scores from the initial round of interviews, Mr. Lucas (who received the highest scores) and Mr. Daniels (who received the second highest scores) advanced to the final round of interviews with Ms. Neloms. Def.'s SOF, ECF No. 32-2 ¶¶ 7-13. In a declaration in support of CGSI's motion, Ms. Neloms attested that she selected Mr. Lucas for the position over Mr. Daniels because Mr. Lucas received higher scores during the initial round of interviews than Mr. Daniels, had many more years of experience in the IT field than Mr. Daniels; and she was impressed by Mr. Lucas's very positive recommendations and his performance during his interview with her. *See* Decl. of Leslie Neloms, ECF No. 32-13 ¶¶ 9-10. These reasons are clearly nondiscriminatory and reasonable. *See Fischbach*, 86 F.3d at 1182 (stating selecting candidate based on interview scores precludes the possibility of discrimination); *see also Kennedy v. D.C.*, 519 F. Supp. 2d 50, 62-63 (D.D.C. 2007)(stating selection of applicant with more supervisory experience was a legitimate, non-discriminatory reason for non-selection)*.*

Mr. Daniels points to the fact that Mr. Lucas only had an Associate's degree to show that he was significantly more qualified than Mr. Lucas. Pl.'s Supp. Opp'n, ECF No. 33 at 3-4. However he fails to link this fact to his allegation of intentional discrimination. Moreover, uncontroverted evidence shows that Ms. Neloms was not aware that having a bachelor's

degree was a mandatory requirement for the position when she interviewed Mr. Lucas and Mr. Daniels. Neloms Decl., ECF No. 32-13 ¶ 8. Ms. Neloms' belief that a Bachelor's degree was not a mandatory requirement does not create a material fact because "[o]nce the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Mann v. WMATA*, 168 F. Supp. 3d 71, 82 (D.D.C. 2016)(quoting *Fischbach*, 86 F.3d at 1183). Mr. Daniels did not depose Ms. Neloms and he fails to provide any evidence which puts into dispute her sworn statement that she did not know at the time she made the hiring decision that Mr. Lucas's educational history precluded him from the position. There is no evidence to suggest that any mistake made at the time of the hiring decision was not justified by a reasonable belief in the qualifications of the position. *See Mann*, 168 F. Supp. 3d at 82 ("An employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."). Accordingly, the Court finds that CGSI's "qualifications-based justification constitutes a legitimate, non-discriminatory reason for the allegedly discriminatory" conduct of not offering Mr. Daniels that September 2011 position. *See Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir.

2006)(selection of application based on relative work-experience was a legitimate non-discriminatory reason).

With respect to the November 2011 posting, CGSI states that the reason it selected Mr. Thomas over Mr. Daniels is because Mr. Thomas applied for the position, as was required. Def.'s SOF, ECF No. 32-2 ¶ 38. Mr. Daniels, however, failed to apply for the position, and, CGSI argues it did not consider him for the position because he failed to do so. *Id.* ¶¶ 28-30, 33, 35-36. Mr. Daniels responds that, in his view, he was not required to formally apply to the position because he was made Acting Senior IT Administrator soon before the position was posted, and because it was clear that he was interested in a permanent position. Pl.'s Supp. Opp'n, ECF No. 33 at 5-8.

The Court finds that CGSI's explanation that it did not hire Mr. Daniels because he failed to apply for the position is a legitimate, non-discriminatory explanation. It is undisputed that Mr. Daniels did not apply to the position, and under these circumstances, that fact is fatal to his argument that CGSI has not proffered a legitimate explanation for the November 2011 position. Mr. Daniels relies on *Cones v. Shalala*, 199 F.3d 512 (D.C. Cir. 2000), for the proposition that the failure to apply to a position is not fatal to a discrimination claim based on failure to hire as long as the applicant made "every reasonable

attempt to convey his interest in the job to his employer."
Pl.'s Supp. Opp'n, ECF No. 33 at 6 (quoting *id.*).

In *Cones*, the position the plaintiff was passed up for was never opened to competition, but rather was filled when the selected candidate expressed her interest to a superior. *See Cones*, 199 F.3d at 518. Critically, the plaintiff in *Cones* expressed his interest in the exact same way and therefore, the Court held, if the selected candidate could get the position by expressing her interest to a supervisor, the plaintiff doing "precisely the same thing" was sufficient to show that he also "applied" for the position. *Id.*

The key difference in this case is that the November 2011 Senior IT Administrator position was "open to competition" once it was posted on the Job Board for all employees to see. Mr. Daniels did not make "every reasonable attempt to convey his interest in the job to his employer" when he simply served in the Acting IT Administrator role or by virtue of the fact that he had applied to the same position two months prior. This case is more analogous to *Davis v. Ashcroft*, 355 F. Supp. 2d 330 (D.D.C. 2005), in which the court held that a plaintiff's failure to apply to a position that was announced to all divisions was fatal to his case. As in *Davis*, Mr. Daniels "has not provided the court with any authority and the Court has found none, for the proposition that the agency was required to

individually advise [him] of [the] vacancy." *Id.* at 357.
Accordingly, Ms. Neloms' proffered reason for not hiring Mr.
Daniels for the November 2011 position (*i.e.,* because he never
applied) was a legitimate non-discriminatory explanation for the
employment action that shifts the burden back to Mr. Daniels to
show pretext.

**B. Mr. Daniels has Failed to Rebut CGSI's Reasons**

Because CGSI's proffers satisfy its burden under the
*McDonnell Douglas* framework, the burden shifts back to Mr.
Daniels to demonstrate that the proffered nondiscriminatory
explanations are a pretext for discrimination. *See Fischbach*, 86
F.3d at 1182. A plaintiff may carry his or her rebuttal burden
by "presenting enough evidence to allow a reasonable trier of
fact to conclude that 'the employer's proffered explanation is
unworthy of credence,' and merely a pretext for discrimination"
*Desmond v. Mukasey*, 530 F.3d 944, 962 (D.C. Cir. 2008)(internal
citations omitted). If an employer states that it's hiring
decision was based on the relative qualifications of the
candidates, a plaintiff can challenge that qualification-based
explanation if the plaintiff can show that he or she was
"significantly better qualified" for the job than those
ultimately chosen. *Holcomb v. Powell*, 433 F.3d at 897. The
qualifications gap must be "great enough to be inherently
indicative of discrimination." *Id.* Only then could the fact-

finder "legitimately infer that the employer consciously selected a less-qualified candidate[,] something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007)(internal quotation marks omitted). In cases in which the comparative qualifications are close, a reasonable jury would not usually find discrimination because the jury would "assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)(en banc).

Mr. Daniels has not shown that he was significantly more qualified than Mr. Lucas. Mr. Lucas's resumé profile shows that he had at least 12 years of experience in the information technology field, ECF No. 32-15, whereas Mr. Daniels had two and a half years of experience in the field, ECF No. 32-16. Mr. Lucas also outperformed Mr. Daniels in the initial round of interviews and was rated higher for the position by each of his initial interviewers. Def.'s SOF, ECF No. 32-2 ¶¶ 9-10. Moreover, Ms. Neloms was more impressed by Mr. Lucas's final interview and his many years in the IT field. *Id.* ¶ 17.

Mr. Daniels does not dispute that Mr. Lucas had ten more years of relevant experience in the IT field, or that Mr. Lucas

received higher scores during the initial rounds of the interview process. *See* Pl.'s SOF, ECF No. 33-4 ¶¶ 22-24. Rather, he relies on the fact that Mr. Lucas had an Associate's degree and therefore did not meet the Bachelor's degree requirement for the position. Pl.'s Supp. Opp'n, ECF No. 33 at 3-4. However, the relevant inquiry is what the employer believed at the time of the hiring, and Ms. Neloms had not known that the Bachelor's degree requirement was mandatory. Neloms Decl., ECF 32-13 ¶ 9. In determining whether an employment action is discriminatory, the Court "is tasked with evaluating the reasonableness of the decisionmaker's belief because honesty and reasonableness are linked[.]" *Jackson v. Gonzales*, 496 F.3d 703, 708-09 (D.C. Cir. 2007). Here, it was reasonable for Ms. Neloms to have placed a greater value on Mr. Lucas' over ten years of experience in the IT Field in comparison to Mr. Daniels' two and a half years of experience, and to not base her decision on educational requirements, as she believed at the time both candidates met the requirements for the position. Neloms Decl., ECF 32-13 ¶ 9.

Mr. Daniels attempts to cast doubt on Ms. Neloms' credibility and the rationale articulated in her declaration. Pl.'s Supp. Opp'n, ECF No. 33 at 3-4. Specifically, Mr. Daniels argues that Ms. Neloms' assertion that "[o]nly after Mr. Daniels filed a complaint did [she] become aware that a bachelor's degree was a mandatory requirement for the position," Neloms

Decl., ECF No. 32-13 ¶ 8, is false because Ms. Neloms noted in a December 27, 2011 interview, well before the filing of the complaint, that an applicant did not meet the Bachelor degree requirement for the position. Pl.'s Supp. Opp'n, ECF No. 33 at 4. Mr. Daniels argues that Ms. Neloms' statement is false, thereby creating a genuine issue of material fact as to whether CGSI's reasons for not hiring him was a pretext for discrimination. *Id.* Mr. Daniels also argues that Mr. Lucas was hired five days before his application was submitted, thereby casting doubt on the rationale for hiring Mr. Lucas. *Id.*

Ms. Neloms' credibility does not create a genuine issue of material fact for at least two reasons. First, independent of what Ms. Neloms understood at the time of the December 2011 interview, it is undisputed that **at the time** she interviewed Mr. Lucas, Ms. Neloms did not know that the job required a Bachelor's degree. Neloms Decl., ECF No. 32-13 ¶ 8. Second, and relatedly, even if Ms. Neloms did know that Mr. Lucas was not qualified and chose him anyway, Mr. Daniels has not disputed that his "race, ancestry, and national origin did not have any bearing on [Ms. Neloms'] decision to hire Mr. Lucas." Pl.'s SOF, ECF No. 33-4 ¶ 19. ¶ In other words, despite attacking Ms. Neloms' credibility generally, he has provided no support for

his assertion that Ms. Neloms' actions were motivated by racial animus.[5]

As for the November 2011 position, Mr. Daniels has not shown he was significantly more qualified than Mr. Thomas. It is undisputed that Mr. Daniels did not apply for the November 2011 position whereas Mr. Thomas applied for the position. Def.'s SOF, ECF No. 32-2 ¶ 36. Although Mr. Daniels concedes he never applied for the position, he argues that he was not required to because he had applied for the September position and was rejected. Pl.'s Supp. Opp'n, ECF No 33 at 5–7. He argues that he was made Acting Senior IT Administrator days before the November 2011 posting, and therefore it would make little sense for him to apply for a job he had already obtained. *Id.* Mr. Daniels also argues that he was never notified of the job posting, or that his position of Acting Senior IT Administrator was temporary. *Id.*

---

[5] Mr. Daniels argument that Mr. Lucas was hired five days before he applied for the position is belied by the record. Although Mr. Lucas' application bears the date of October 11, 2019, CGSI has submitted documents that show that Mr. Lucas applied for the position on September 13, 2019. ECF No. 32-15. Moreover, the interview notes submitted as exhibits to CGSI's supplemental motion show that Mr. Lucas's interview was on September 29, 2019, the same day that Mr. Daniels was interviewed. ECF No. 32-9 at 2 (Mr. Lucas' interview notes); ECF No. 32-11 at 2 (Mr. Daniels' interview notes). Therefore, Mr. Daniels' implication that Mr. Lucas' job offer was predetermined is not persuasive.

Mr. Daniels' arguments are not persuasive. The undisputed evidence shows the Senior IT Administrator position was posted on the Chugach Job Board in November 2011 for all employees to see; and that Mr. Daniels was aware of the Job Board. Def.'s SOF, ECF No. 32-2 ¶ 28. Mr. Daniels' arguments that he did not believe he was required to apply for the position are beside the point. He points to no authority for the proposition that an agency is required to notify an employee of a particular opening. To the contrary, this Circuit has repeatedly stated that if an employer posts a job opening a plaintiff must apply to the position to maintain a discrimination claim. *See, e.g.*, *Thomas v. Ghandi*, 525 F. Supp. 2d 103, 107–108 (D.D.C. 2007)(granting summary judgment when plaintiff failed to apply for a position and rejecting argument that plaintiff should have been automatically considered). The record shows that Mr. Daniels did not apply for the job, and therefore the Court cannot find that he was significantly more qualified for the Senior IT Administrator position than Mr. Thomas, who did apply for the position.[6]

---

[6] Put differently, Mr. Daniels has failed to make a *prima facie* case of discrimination. The D.C. Circuit has instructed that when a defendant provides a legitimate non-discriminatory reason for an employment decision the *prima facie* case inquiry falls out of the analysis. *Brady*, 520 F.3d at 494. However, when considering whether an employer's reason is not the actual reason but rather pre-text for intentional discrimination, the Court should consider all the evidence including "the

Based on the undisputed facts, a reasonable jury could not conclude that Mr. Daniels was significantly more qualified than either Mr. Lucas or Mr. Thomas. Therefore Mr. Daniels has failed to meet his burden of demonstrating that CGSI's reasons for not hiring him for September 2011 or the November 2011 Senior IT Administrator position were a pretext for discrimination.

## C. Mr. Daniels Fails to Provide Evidence of Intentional Discrimination

Even if Mr. Daniels could show the reasons given by CGSI were pretextual, he has failed to provide any evidence demonstrating that the reason he was not selected was due to intentional discrimination. *See Brady*, 520 F.3d at 494 (stating plaintiff must prove pre-text "and that the employer intentionally discriminated against the employee.") In fact, Mr. Daniels agreed that "race, ancestry, and national origin did not have any bearing on [Ms. Neloms'] decision to hire Mr. Lucas." Def.'s SOF, ECF No. 32-2 ¶ 19; Pl.'s SOF ECF No. 33-4 ¶ 19 (admitting this fact). With regard to the November 2011 position, Mr. Daniels fails to offer any evidence that his ancestry was the reason he was not offered the position.

---

plaintiff's *prima facie* case." *Carter*, 387 F.3d at 878. Moreover, when determining if an applicant is significantly more qualified than the selected applicant, whether the plaintiff applied for the position at all is clearly relevant to the Court's analysis.

In lieu of any evidence of intentional discrimination, Mr. Daniels simply points to the OFCCP report as support for his claims in this case. Pl.'s Supp. Opp'n ECF No. 33 at 3. Specifically, the report outlines the chronology of Mr. Daniels' employment at CGSI, the interview process through which Mr. Lucas was selected, and the reposting of the position which led to the selection of Mr. Thomas. OFCCP Compl., ECF No. 30-2 at 7–11. The report then determined there was discrimination because Mr. Lucas was hired despite only possessing an Associate's degree. *Id.* at 11. The report also notes that CGSI admitted that its selection procedures were not perfect and Ms. Neloms stated that hiring Mr. Lucas although he did not meet the minimum requirements "was clearly an error." *See id.* at 10. This was, according to the report, enough evidence to show discrimination. *Id.* at 11.

Although this evidence was enough for the OFCCP investigation to make a finding of discrimination, review of the fully developed record does not lead to the same conclusion by the Court. S*ee Francis v. District of Columbia*, 731 F. Supp. 2d 56, 72, n.7. (stating agency determination of discrimination "does not have any binding effect in a collateral Title VII civil action."). The report fails to explain why CGSI's "error" of hiring Mr. Lucas was motivated by discriminatory animus as is required by law. As the D.C. Circuit has explained "[e]ven if a

court suspects that a job applicant 'was victimized by poor selection procedures it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Fischbach*, 86 F.3d at 1183 (citation omitted). CGSI's selection procedures can be described as poor in this case because CGSI clearly erred when it failed to appreciate the import of Mr. Lucas's educational history. However, the undisputed fact is that in selecting Mr. Lucas "race, ancestry, and national origin did not have any bearing on [Ms. Neloms'] decision." *See* Pl.'s SOF ECF 33-4 ¶ 19. The same holds true for Mr. Thomas since Mr. Daniels failed to apply for the position.

Mr. Daniels has failed to proffer any evidence of intentional discrimination. *Fischbach*, 86 F.3d at 1183 (stating a court may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive"). Based on this record, the Court concludes Mr. Daniels failed to meet his burden of showing that a reasonable jury could conclude that CGSI's actions were based on a discriminatory motive. *See Jackson*, 496 F.3d at 707. Therefore, the Court **GRANTS** CGSI's motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment and its supplemental motion for summary

judgment are **GRANTED.** An appropriate Order accompanies this

Memorandum Opinion.

       **SO ORDERED.**

 **Signed:**    **Emmet G. Sullivan**
            **United States District Judge**
            **October 18, 2019**